STATE, Respondent, vs. ANDERSON and another, Appellants.

*November 7—December 3, 1935.*

For the appellants there was a brief by *Harold J. McGrath* and *Earl R. Kuelthau,* both of Milwaukee, and oral argument by *Mr. McGrath.*

For the respondent there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, *William A. Zabel,* district attorney of Milwaukee county, and *Thomas A. Byrne,* assistant district attorney, and oral argument by *Mr. Byrne.*

WICKHEM, J. Defendants' contentions upon this appeal are two: (1) That the court erred in permitting the state to

read into evidence the testimony of a witness temporarily absent from the state, who had previously testified upon the preliminary examination; (2) that the evidence is insufficient to sustain the verdict. A brief statement of the facts may contribute to an understanding of the questions raised by these contentions.

For about ten years prior to 1931, defendants Anderson and Wendt were president and vice-president, respectively, of the Marquette Securities Company, a corporation engaged in the investment securities business. For some time prior to 1931, defendant Anderson had known the complaining witness, Mary Skripinski, and her daughter, Helen Skripinski, and had had dealings with Helen concerning the purchase and sale of securities. Defendant Wendt neither knew nor had dealings with complaining witness or her daughter prior to July 7, 1931. On this date Anderson called at the Skripinski home in response to a telephone request from Helen Skripinski. On that occasion it is admitted that Helen delivered to Anderson three certificates evidencing the ownership of two hundred and fifty shares of Cities Service Company stock. These certificates were issued in the name of Helen Skripinski. It is equally well established that the certificates were delivered for the purpose of accomplishing a transfer of the stock to Mary Skripinski, the complaining witness here and mother of Helen, in whose name the certificates then stood. The certificates were concededly deposited by the Marquette Securities Company as collateral for a bank loan. The arrangements between the company and the bank were those usual in the case of such a business, i. e., securities were deposited, withdrawn, and various shifts and transfers of collateral made to accommodate the ordinary business of the company. Shortly after the deposit, however, the price of stocks declined to such an extent that the company found itself without means of releasing these

shares as collateral. At the time of depositing the certificates, a like number of bearer certificates was purchased and likewise deposited in the collateral account. The bank's refusal to deliver the certificates or certificates evidencing an equal number of shares made it impossible for defendants to carry out their transaction to the satisfaction of the complaining witness. All of the foregoing facts are thoroughly established and not in dispute. Here, however, the agreement ends.

It is the position of the state that the transaction between Helen Skripinski and Anderson constituted defendants bailees of the certificates for the mere purpose of securing their transfer. It was the position of defendants that while this was the ultimate result to be reached, Helen had consented that the shares be purchased by the Marquette company, converted into bearer certificates, held for thirty or sixty days, and then transferred to the name of the complaining witness. According to defendants, the purpose of this arrangement was to enable defendants to get a commission upon the deal and to save Helen and her mother the costs of transfer. Defendants claim that it was the understanding that the certificates were to be deposited as collateral and otherwise dealt with as defendants' property, subject to an obligation on defendants' part ultimately to deliver an equal number of shares running to Mary Skripinski.

At the time of the transaction in question, Anderson left with Helen Skripinski a form contract which purported to be an agreement by Mrs. Mary Skripinski to purchase two hundred and fifty shares of the common stock of the Cities Service Company, and which acknowledged the receipt by defendants of two hundred and fifty shares of the same stock on account of the purchase. The name of Mary Skripinski was filled in by Anderson, who then signed the receipt. Some time during 1932, Helen Skripinski died, and the family be-

ing in some doubt as to the precise nature of her understanding with Anderson, the latter signed a receipt as of July 7, 1931, acknowledging receipt of two hundred and fifty shares of stock "to be transferred into the name of Mrs. Mary Skripinski."

The testimony of Mary Skripinski is unsatisfactory and inconclusive. She knew nothing of the transaction actually had between Helen and Anderson. In substance, she claims that the stock was hers, and that the certificates were merely taken in the name of Helen for convenience. This, of course, would not militate against the apparent authority of Helen to deal with the certificates as owner.

The precise question is whether there was a bailment or whether the transaction was as defendant claimed, to be accomplished by the sale of the stock to defendants, the purchase by defendants of bearer certificates, and an ultimate transfer to complaining witness of other and different certificates with the right in Anderson and Wendt in the meantime to use the stock as collateral for loans at the bank. The only evidence to sustain the latter version is that of defendants, and this the jury was not bound to believe. Assuming as we must that the jury rejected defendants' testimony, there are three items of evidence that may be considered as bearing upon the transaction and throwing light on its nature.

The first is the writing signed by defendant Anderson at the time of the transaction. This writing contains an agreement to purchase stock and contains a receipt to be signed by the selling agent for any payments made on account. Anderson inserted Mary Skripinski's name as customer, and then acknowledged receipt of two hundred and fifty shares of the same stock to apply on account. This may give some color to defendants' version of the transaction because it indicates that two hundred and fifty shares of stock had been paid in

as part of the purchase price for the sale of an equal number of shares of the same stock. The paper is quite inconclusive, however, and may have been intended merely as a receipt and used for want of a more appropriate form.

The subsequent writing executed by Anderson, which constitutes at least an admission by Anderson of his understanding of the original transaction, indicates that the receipt of two hundred and fifty shares of this stock was merely for the purpose of transfer to the name of Mary Skripinski. This, of course, is not conclusive because it is not necessarily inconsistent with the contention of Anderson that while the transfer was the ultimate objective, it was to be accomplished as claimed by him. Standing alone, however, assuming the defendants' testimony to be rejected, it supports the inference that there was a bailment, and in connection with the conceded use of the certificates by defendants for their own purposes, probably made a case for the jury. It is not necessary to determine this, however, in view of the testimony of Herman A. Mosher, deputy district attorney of Milwaukee county, to the effect that defendants admitted to him the charges in the complaint. It is considered that, at least with this testimony in the case, a jury question was presented.

Mosher's testimony was to the effect that he called Wendt and Anderson to his office upon receiving the complaint of Mary Skripinski, and that at that time he discussed the situation with each of them. He told them that they would be well advised to make restitution because the offense charged was a serious one. He also stated that "Anderson admitted receiving the stock. . . . Wendt told me that he had placed the stock I believe with the First Wisconsin National Bank as security; that they were pressing them for more collateral on their loan . . . and that the bank eventually sold them out. . . . They both admitted the charges in the complaint. I do not remember the exact words. . . ." His testimony

further is that they promised to make restitution. There was no cross-examination of Mr. Mosher upon the preliminary examination. This testimony created a jury issue if none existed without it.

Defendants' next contention is that the evidence of Mr. Mosher upon the preliminary examination was erroneously admitted. Its admission was predicated upon an affidavit to the effect that Mr. Mosher, a deputy district attorney, had testified upon the preliminary examination: That Mr. Mosher "is now absent from the city of Milwaukee, county of Milwaukee, and state of Wisconsin, and is in southern United States on his vacation; that affiant is informed and verily believes that the said Herman A. Mosher left the city of Milwaukee on or about the 10th day of November, 1934, and that he will not return until approximately the 24th day of November, 1934. Affiant further states that the said Herman A. Mosher is now outside of the state of Wisconsin and is not subject to a subpœna of this court; that this affidavit is made as a basis for the introduction of the testimony given by the said Herman A. Mosher in district court as evidence in this case."

We see no escape from defendants' contention. The absence of a witness from the jurisdiction is usually accepted as a sufficient foundation for the admission of his testimony taken at a former trial or upon a preliminary examination in spite of its hearsay character. With reference to the period of absence necessary to make this rule applicable, Mr. Wigmore in his work on Evidence, vol. 3, § 1404, states:

"(a) The absence, it is sometimes said, must be by way of *residence,* and not merely of *temporary sojourn,* because otherwise the trial could be postponed until his return. This, however, seems too strict a rule; by his absence he is at the time actually unavailable, no matter when he is to return; and, if the witness is not of such importance as to require a postponement until his return, still more if the opponent

does not desire or consent to a postponement, there is no reason for distinguishing between temporary and permanent absence."

It is unnecessary here to determine the validity of Mr. Wigmore's criticism of the rule that a temporary absence is not enough to warrant the admission of such testimony. It suffices to state our conclusion that the admission of this testimony cannot be justified under any rule, and that the comment in the latter part of the paragraph of Mr. Wigmore is applicable here. The right to confront and cross-examine a witness is an extremely important one, and where as here, the deputy district attorney, having had at least some connection with this particular case and knowing that it was to be put on for trial during his absence, went upon a short vacation, we think that the calls of justice would not be answered by admitting his testimony upon the preliminary examination.

That the admission of evidence to the effect that the defendants admitted their guilt to him was prejudicial cannot be doubted; that it contributed and perhaps was essential to the creation of a jury issue is clear. Since it was testimony to the effect that defendants admitted their ultimate guilt, it was especially important that defendants have the opportunity adequately to test this evidence by cross-examination. Under these circumstances the evidence was of such importance and the contemplated absence from the jurisdiction so short that we think the evidence was improperly admitted. In view of Mr. Mosher's known absence, there should have been a continuance until his return, if his testimony was deemed essential.

It is not necessary to review or restate what has been said in the cases of *Inda v. State*, 198 Wis. 557, 224 N. W. 733, and *Philbrook v. State,* 216 Wis. 206, 256 N. W. 779. Neither of those cases involved a temporary absence. In

each, the absence, if established, was permanent, or at least indefinite. Here the absence is conceded as well as its duration, which is extremely short. We content ourselves with the holding that an absence of such duration and under such circumstances as are here disclosed does not create the necessity for the admission of hearsay evidence.

It follows that judgment must be reversed.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial.